```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
PEDRO JUAN TAVARES,                  : 08 Civ. 3782 (JSR) (JCF)
                                     :
          Plaintiff,                 :    MEMORANDUM
                                     :    AND ORDER
    - against -                      :
                                     :
CITY OF NEW YORK; BUREAU OF          :
CORRECTION DEPT.; GEORGE MOTCHAM     :
DETENTION CENTER; EMMANUEL BAILEY,   :
Warden; MISS GLOVER, Captain;        :
MISS PEE, Captain; MR. JEAN,         :
Corrections Officer; MISS JOHN DOE,  :
Corrections Officer;                 :
                                     :
          Defendants.                :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Pedro Juan Tavares, a prison inmate, brings this action pro se pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that the defendants have violated his constitutional rights. He claims that while he was a pretrial detainee at the George Motcham Detention Center ("GMDC") on Rikers Island, Correction Officer Jean used excessive force against him, causing him physical injuries. He further asserts that Officer Jean, Warden Emmanuel Bailey, Captain Glover, Captain Pee, and Officer John Doe conspired to cover-up Officer Jean's actions. Finally, he alleges municipal liability on the part of the City of New York (the "City") and the Department of Corrections.

Mr. Tavares has filed a motion for leave to amend the Complaint. His proposed Amended Complaint adds four officer

1

defendants (the "proposed defendants"), two of whom were apparently listed under different names in the Complaint, and includes allegations that his hip -- in addition to his back -- was injured as a result of the incident.[1]  For the reasons set forth below, the plaintiff's motion for leave to amend is granted in part and denied in part.

Background

   A.  Facts

The plaintiff's claims arise from an incident that he alleges occurred on the evening of July 17, 2007 during his pretrial

---

[1] With the exception of Warden Bailey and Deputy Warden Edmund Duffy, who is one of the proposed defendants, the individual defendants have refused to reveal their first names and have redacted them from documents turned over in discovery.  They have objected to the plaintiff's requests for their first names on the basis that such requests are "overbroad, seek information that is protected from disclosure by the official privilege and is not relevant or reasonably calculated to lead to the discovery of admissible evidence [, and ] . . . calls for the production of confidential information [that] would implicate security concerns of the New York City Department of Correction."  (Objection and Response to Question No. 1 in Defendants' Responses and Objections to Plaintiff's Written Deposition Questions to Captain Glover, attached as Exhibit I to Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment; Objection and Response to Question No. 1 in Defendants' Responses and Objections to Plaintiff's Written Deposition Questions to Correction Officer Pennant ("Pennant Response"), attached as Exh. B to Letter of Brian Francolla dated Jan. 14, 2010).  They further objected to the request for the first name of Officer Pennant, another of the proposed defendants, because it "infringes upon the privacy interests of a non party."  (Pennant Response).  It is difficult to discern how such arguments meet the requirements of Federal Rule of Civil Procedure 26(g)(1)(B), which mandates that discovery responses be "nonfrivolous," "neither unreasonable nor unduly burdensome," and not intended to "harass, cause unnecessary delay, or needlessly increase the cost of litigation."

detention at GMDC. In his original Complaint, Mr. Tavares claims that while he walked back to his dormitory after picking up some medication, Officer Jean touched his face in order to stop him and allow two officers -- Captain Pee and Officer John Doe -- to pass. (Complaint ("Compl."), ¶ 14). Mr. Tavares then asked Officer Jean why he had touched his face. (Compl., ¶ 15). Officer Jean became "furiously angry and very aggravated," threw him against the wall, spread his legs by kicking him "harshly" on both of his ankles, and pressed his chest against the wall. (Compl., ¶ 16). The pressure on his chest was so severe that Mr. Tavares thought he was going to faint. (Compl., ¶ 16).

The plaintiff alleged that the event lasted for three to five minutes and was witnessed by Captain Pee and Officer Doe. (Compl., ¶ 17). The incident ended when Captain Pee ordered Officer Jean to stop and Mr. Tavares to walk away. (Compl., ¶ 17).

Mr. Tavares states that he filed a grievance with the Office of the Inspector General and served copies on Warden Bailey and on the Grievance Committee at GMDC. (Compl., ¶ 18). After a four-month delay, Captain Glover, who led the investigation, concluded that the plaintiff's complaint lacked merit. (Compl., ¶¶ 19-20).

Since the incident, Mr. Tavares asserts that he has suffered from persistent back pain and that he walks with a limp. (Compl., ¶ 23). He is now unable to walk without the assistance of a cane and claims that he soon "will become cripple[d] and disable[d]"

without the appropriate medical treatment. (Compl., ¶¶ 23-25). He also has taken painkillers since the alleged assault. (Compl., ¶ 22).

B. Procedural History

The plaintiff filed this action on April 22, 2008. On March 6, 2009, he submitted an amended complaint, which I ordered stricken because he had not obtained leave of court to file it. (Memorandum Endorsement dated April 8, 2009). On April 16, 2009, Mr. Tavares moved for leave to file an amended complaint. The Amended Complaint identifies the person named Captain Pee in the original Complaint as Captain Drain and the person named Officer John Doe as Officer Pennant. It also adds Mr. Edmund Duffy, the Deputy Warden of Security at GMDC at the time of the incident, as a defendant. Furthermore, although there is no mention of her in the Amended Complaint that he submitted with his motion, Mr. Tavares has since indicated a desire to add Vanessa Singleton, Deputy Warden of Security at GMDC, as a defendant. (Plaintiff's Answer to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Pl. Response") at 31-32). Finally, the Amended Complaint includes allegations that the plaintiff's hip was also injured during the incident. (Amended Complaint ("Amend. Compl."), ¶ 25).

Nearly simultaneously with Mr. Tavares' motion for leave to amend, the City, the Department of Correction, Captain Glover, and

Warden Bailey moved for summary judgment and to dismiss the claims against Officer Jean. As a result, the plaintiff's arguments regarding his motion for leave to amend are contained in his submissions concerning the defendants' motions.[2] The defendants have since withdrawn these motions with an understanding that their summary judgment motion can be renewed once the Amended Complaint has been filed and served. They have also filed a response to the plaintiff's motion to amend, arguing that the motion should be denied on the ground of futility because Mr. Tavares cannot establish his claims against the proposed defendants. (Letter of Brian Francolla dated Jan. 14, 2010).

Discussion

    A. Standard for Amendment

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998). Regarding the use of this discretion, the Supreme Court has

---

[2] In addition, some of the defendants' arguments in opposition to the motion to amend are included in their reply papers regarding their motion for summary judgment.

stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

Where, as here, a proposed amendment adds new parties, the propriety of amendment is governed by Rule 21 of the Federal Rules of Civil Procedure. Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001). That rule states that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21. In deciding whether to permit joinder, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting Fair Housing Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); Momentum Luggage, 2001 WL 58000, at *2; Clarke v. Fonix Corp., No. 98 Civ. 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999). Thus, joinder will be permitted absent undue delay, bad faith, prejudice, or futility. Joinder may be denied as futile if the proposed pleading would not withstand a motion to dismiss pursuant to Rule

6

12(b)(6) of the Federal Rules of Civil Procedure. <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168 (2d Cir. 2003), <u>rev'd on other grounds</u>, 544 U.S. 197 (2005); <u>Smith v. CPC International, Inc.</u>, 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000).

As when considering a motion under Rule 12(b)(6), a court evaluating the futility of an amendment to a complaint must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Oneida Indian Nation</u>, 337 F.3d at 168-69; <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004). A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8. <u>Id.</u> at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

<u>Pro se</u> complaints are held to less stringent standards than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing <u>Erickson</u>, 551 U.S. at 94). In fact, pleadings of a <u>pro se</u> party should be read "'to raise the strongest arguments that they

suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

B.  Captain Drain and Officer Pennant

1.  Failure to Intervene

If there is a constitutional violation under § 1983 alleged in the Amended Complaint against Captain Drain and Officer Pennant, it is a failure to intervene during Officer Jean's assault. "Officers who are present when constitutional torts are being committed have a duty to intervene and stop the unconstitutional conduct if they have a reasonable opportunity to do so." Bancroft v. City of Mount Vernon, No. 08 Civ. 9677, 2009 WL 4277268, at *12 (S.D.N.Y. Nov. 23, 2009); accord Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."). Liability only attaches if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know

8

that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Relying on O'Neill v. Krzeminski, the defendants argue that because Captain Drain ordered Officer Jean to stop and he "immediately complied," Captain Drain fulfilled her affirmative duty to intervene to protect the plaintiff. (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment at 24-25).[3] In O'Neill, the Second Circuit held that an officer could not be liable for failing to prevent another officer from striking a prisoner with a "rapid succession" of blows, but could be legally responsible for not intervening as the prisoner was dragged by a different officer across the floor. 839 F.2d at 11-12. This distinction turned on whether the officer had a "realistic opportunity to attempt to prevent" the harm. Id.

Although the defendants correctly imply that Captain Drain's conduct is distinguishable from that of an officer who failed to take any action to prevent an inmate's assault, they incorrectly rely on O'Neill for the proposition that an officer who eventually intercedes to protect a prisoner has fulfilled his duty to intervene. By alleging that Captain Drain and Officer Pennant

---

[3] The defendants' arguments against adding Officer Pennant as a defendant are based on information gathered during discovery and thus irrelevant to an analysis of a motion to amend.

9

watched for at least three minutes as Officer Jean assaulted him, Mr. Tavares has successfully pled a claim for failure to intervene under § 1983. See Muhmmaud v. Murphy, No. 3:08 Civ. 1199, 2009 WL 4041404, at *9 (D. Conn. Nov. 19, 2009) ("Prison officials . . . have a duty to respond appropriately once they are aware of a substantial risk of serious harm."). It is plausible, under the facts alleged by the plaintiff, that Captain Drain and Officer Pennant could have stopped Officer Jean's behavior sooner, particularly in light of Officer Jean's cessation of his use of force against Mr. Tavares as soon as Captain Drain commanded him to stop.

2.  Conspiracy Claims

In his Amended Complaint, the plaintiff reiterates his initial conspiracy claim under §§ 1983, 1985, and 1986 against the proposed defendants, alleging that they conspired to cover-up or prevent investigation into Officer Jean's assaultive behavior. Almost all of the facts provided in the Amended Complaint about the alleged conspiracy concern the actions of Captain Glover and Warden Bailey, who are already defendants in this action. Mr. Tavares accuses Captain Glover of entering into a conspiracy to cover-up the assault because Mr. Tavares is a "minority Hispanic" who exercised his constitutional rights. (Amend. Compl., ¶ 28). And he states that Warden Bailey furthered the conspiracy in order for Officer Jean and other officers to be able to continue to assault detainees

10

like himself "with impunity and free hand." (Amend. Compl., ¶ 29).

The plaintiff's claim of conspiracy against the proposed defendants appears to stem from Captain Glover's alleged statement to him that during her investigation into the incident, "none of the personnel she had interviewed . . . had any recollection of any incident" on the date in question. (Amend. Compl., ¶ 21). The plaintiff therefore draws the conclusion that these additional prison personnel must have been involved in the alleged conspiracy. (Amend. Compl., ¶ 33).

      a.   <u>Section 1983</u>

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999). Although a plaintiff cannot simply set forth conclusory allegations of a § 1983 conspiracy, <u>Dwares v. City of New York</u>, 985 F.2d 94, 99-100 (2d Cir. 1993), the Second Circuit has acknowledged that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." <u>Pangburn</u>, 200 F.3d at 72 (quoting <u>Rounseville v. Zahl</u>, 13 F.3d 625, 632 (2d Cir. 1994)).

However, based on the facts asserted in the Amended Complaint, Mr. Tavares has not made out a claim for conspiracy against the

proposed defendants under any of the civil rights laws he invokes. The plaintiff does not allege facts indicating that there was an agreement between any of the defendants to deprive him of his constitutional rights. A "'complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Gyadu v. Hartford Insurance Co., 197 F.3d 590, 591 (2d Cir. 1999) (quoting Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)).

In response to the defendants' motion for summary judgment, the plaintiff elaborated on his conspiracy claim. It is clear from his submissions that this claim centers around the alleged recycling of a videotape in the surveillance camera located in the area where Mr. Tavares alleges that the incident occurred. Yet, there is no mention of the videotape in the Amended Complaint. Should Mr. Tavares wish to assert a claim of conspiracy based on his allegations about the videotape, he must make a further motion to amend his Complaint again, provided that he can do so with the necessary specificity.

b. Sections 1985 and 1986

Even if Mr. Tavares were to have stated a claim of conspiracy under § 1983, he has not stated a claim under §§ 1985 and 1986. To make out a violation of § 1985(3), a petitioner must demonstrate: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983); accord Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). In addition, the plaintiff must show that the conspiracy was motivated by "'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" United Brotherhood of Carpenters, 463 U.S. at 835 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); accord Mian, 7 F.3d at 1088.

In the Amended Complaint, Mr. Tavares fails to assert sufficient facts to survive a motion to dismiss. His only allegation regarding racial animus appears to be against Captain Glover whom he asserts conspired against him because he is a "minority Hispanic." (Amend. Compl., ¶ 28). Even if this were read more broadly as an allegation against all defendants, it is conclusory and thus insufficient to state a civil rights claim.[4]

---

[4] In his summary judgment papers, the plaintiff claims that the defendants' conspiracy was motivated by racial animus. He notes that he is a light-skinned Dominican and Officer Jean is of Haitian descent, that these groups have a long history of conflict, and that "every time" a Haitian is in a position of authority over a light-skinned Dominican, "they create this kind of animosity in order to provoke an altercation." (Pl. Response at 19). He also

See Mian, 7 F.3d at 1088.

Section 1986 permits lawsuits against persons who refuse or neglect to aid in the prevention of the wrongs proscribed by § 1985. Thus, without a valid claim under § 1985, Mr. Tavares cannot make out a claim under § 1986. Thompson v. New York, 487 F. Supp. 212, 229 (N.D.N.Y. 1979); Hodas v. Lindsay, 431 F. Supp. 637, 645 (S.D.N.Y. 1977).

C. Deputy Warden Duffy

In the Amended Complaint, Mr. Tavares fails to set forth Deputy Warden Duffy's involvement in the incidents giving rise to his claims. He simply asserts that Mr. Duffy was the Deputy Warden of Security at GMDC on the date of Officer Jean's assault. (Amend. Compl., ¶ 10). Therefore, he has not set forth a constitutional claim against this proposed defendant.

D. Deputy Warden Singleton

As mentioned above, Deputy Warden Singleton is not listed as a defendant in the Amended Complaint. Nonetheless, in his submissions regarding the defendants' motion for summary judgment,

---

asserts that Captain Glover repeatedly asked other officers whether the plaintiff is a member of a Dominican Gang and that another corrections officer accused Mr. Tavares of being a part of such a gang. (Pl. Response at 20). Although none of these arguments are asserted in the Amended Complaint, I note that they would not strengthen his § 1985(3) claim. A claim of racial animus based on a history of tension between two groups and stray insulting comments is insufficient to survive a motion to dismiss. Viable claims must allege particular acts motivated by racial animus that furthered the deprivation of the plaintiff's rights. See United Brotherhood of Carpenters, 463 U.S. at 102-03.

the plaintiff has attempted to articulate a claim for denial of his right to access to the courts against Deputy Warden Singleton based on her alleged recycling of the videotape. If Mr. Tavares wishes to add such a claim against Deputy Warden Singleton, he must again move to amend his Complaint, this time including allegations about the videotape.

    E.    Hip Injuries

While the plaintiff claims back injuries in his original Complaint, the Amended Complaint includes allegations that his hip was also injured as a result of the incident. (Compl., ¶¶ 23-24; Amend. Compl., ¶ 25). The defendants contest the plaintiff's assertions by relying on medical records gathered through discovery and thus outside the scope of the court's consideration on a motion to amend. Because the defendants have not provided any reasons why this change to the Complaint should be denied, it will be permitted.

Conclusion

For the reasons discussed above, the plaintiff's motion for leave to amend the Complaint is granted in part and denied in part. The plaintiff may substitute Captain Drain and Officer Pennant for Captain Pee and Officer John Doe as defendants. He may assert a claim for failure to intervene against Captain Drain and Officer Pennant, but he may not assert a conspiracy claim under §§ 1983, 1985, or 1986 against these defendants. Furthermore, he may not

15

add Deputy Warden Duffy or Deputy Warden Singleton as defendants. Finally, he may include the allegations about injuries to his hip as a result of the incident. The plaintiff must file with the Court a revised Amended Complaint consistent with this Order by February 26, 2010 and serve it by March 31, 2010. The Clerk of Court shall provide an Amended Summons. Defendants may renew their motion for summary judgment by April 30, 2010.

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 19, 2010

Copies mailed this date:

Pedro Juan Tavares
241-07-06598
George R. Vierno Center
09-09 Hazen Street - Cell 15-B-6
East Elmhurst, New York 11370

Brian Francolla, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007